**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **ex rel. JOSEPH BRAVIERI,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **97 C 2832** |
| | ) | |
| **NEDRA CHANDLER,** | ) | |
| **Respondent.** | ) | |

**MEMORANDUM AND ORDER**

Petitioner Joseph Bravieri's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, Bravieri's petition is denied.

**I.      Statute of Limitations**

Bravieri's conviction became final prior to the April 26, 1995, enactment of a one-year statute of limitations in 28 U.S.C. § 2244(d)(1). He thus needed to file his § 2254 petition by April 24, 1997. *See Newell v. Hanks*, 283 F.3d 827, 833 (7th Cir. 2002). He did so and made it just under the wire by filing his petition on April 22, 1997. The court dismissed his petition for failure to exhaust and instructed him to refile within thirty days after his state court proceedings concluded. Bravieri, however, sought to reinstate this case after the thirty-day period had expired.

The court allowed him to do so and noted that in granting the motion to reinstate, the court "effectively revived the original case, thus avoiding any statute of limitations problem associated with filing a new [case]." *See Fahy v. Page*, No. 01 C 7532, 2004 WL 1093376 at 2 (N.D. Ill. May 07, 2004). In its answer, the respondent nevertheless reasserts its argument that Bravieri's habeas petition is time-barred.

As the court has previously noted, it told Bravieri back in 1997 that he could seek leave to reinstate and did not enter a final judgment, and then recently granted leave to reinstate. The court had the power to do this because it has the ability to reconsider its prior interlocutory orders prior to the entry of a final judgment. *See Smith v. Massachusetts*, 125 S.Ct. 1129, 1139 (2005) (the court has the "inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment"). Moreover, even if the order dismissing the case with leave to reinstate was somehow considered a final order, the court has the power to revisit it under Rule 60(b)(6). *See Gonzalez v. Crosby*, 125 S.Ct. 2641, 2648 (2005) (Rule 60(b)(6) may be used to attack a defect in the integrity of the federal habeas proceeding and thus may be used to contend that the court erred when it applied the federal statute of limitations for habeas cases).

In addition, the Seventh Circuit has held that in situations such as this, reopening the original case is the proper course of action. *Newell v. Hanks*, 283 F.3d 827, 834 (7th. Cir. 2002). When the court originally dismissed Bravieri's petition, it did not have the benefit of the Seventh Circuit's subsequent decisions holding that his federal habeas action should have been stayed, rather than dismissed, while the state court ruled on Bravieri's post-conviction petition. *See id.* According to the Seventh Circuit, vacating the prior dismissal order fixes any statute of limitations problems because it turns the dismissal into a stay. *See id.* ("By vacating the dismissal, the district court effectively converted it into a stay; this could not have been an abuse of discretion because we now know that staying the action was the right step to take in the first place"). Because the court converted its dismissal into a stay by reopening this case, the case was, in effect, stayed from 1997 until now. *See id.* Thus, Bravieri's petition is timely.

## II.    Background

The court will presume that the state court's factual determinations are correct for the purposes of habeas review as Bravieri has not provided clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The court thus adopts the state court's recitation of the facts, and will briefly summarize the key facts which are relevant to Bravieri's § 2254 petition. *See People v. Bravieri*, No. 1-92-4377 (1st Dist. Aug. 19, 1994) (unpublished order) (direct appeal); *People v. Bravieri*, No. 1-02-442 & 1-02-443 (1st Dist. Feb. 17, 2004) (unpublished order) (post-conviction appeal).

### A.    Bravieri's Trial

The state court held separate but simultaneous bench trials for Bravieri and his co-defendant, Richard Zuniga, to determine if they had committed first degree murder in connection with the shooting death of Joann Gasic and the death of Carmen Sarlo due to shooting, stabbing, and blunt trauma. At trial, Sandra Ault testified that she shared an apartment with Gasic. At about 7 a.m. on the morning of December 18, 1988, she was awakened when Bravieri, Zuniga and Sarlo arrived at the apartment. Ault had known Bravieri and Zuniga for some time, and they often came to the apartment.

Bravieri, Zuniga and Sarlo, who were longstanding friends, decided to play cards at the dining room table, and Ault joined them. Everyone except Gasic (who had gone to sleep on the living room couch) ingested cocaine. At some point during the card game, Bravieri left the dining room and headed towards the living room. Ault looked up, saw Bravieri pointing a gun at Gasic and heard him say, "You got to go Joann, you just got to go," followed by the sound of two gunshots.

Bravieri walked back into the dining room and pointed the gun at Ault. The gun went off and Ault dropped to the floor as if she had been shot in the hopes that Bravieri would think she had been killed and leave her alone. Ault then heard Sarlo tell Bravieri and Zuniga that they should leave, but Bravieri told Sarlo, "No, you got to go, Carmie. You got to go, too." Ault testified that a struggle ensued between Sarlo, Zuniga, and Bravieri. In a custodial statement from Zuniga, he said that he returned from the restroom to find Sarlo and Bravieri fighting for control of a shotgun.

Ault managed to flee from the apartment. As she did so, she heard the sounds of a struggle, plus Bravieri telling Zuniga, "You got to shoot him in the head, Ricky. You got to shoot him in the head." She also heard Bravieri going through the silverware drawer where the knives were stored.

The police captured Bravieri and Zuniga at a friend's home where they had removed their bloody clothes, placed them into garbage bags, and changed into clean clothes. While in police custody, Zuniga made a statement to the effect that he and Bravieri were partners in the killings and suggested that Bravieri shot Gasic as a result of cocaine intoxication. He also corroborated Ault's testimony regarding Bravieri's attempt to kill her by telling the police that Bravieri shot at Ault but missed.

Ault also testified that when Bravieri entered the apartment on the day of the murders, he was carrying Zuniga's coat in front of him in a strange manner that suggested that he was hiding a gun under the coat. Upon cross-examination, she admitted that she told the prosecutor this information months before trial but that this statement was not in her grand jury testimony. Bravieri's counsel objected to the admission of Ault's testimony about the coat, claiming that the State had violated its duty to disclose this information prior to trial. The State argued that there

was no discovery violation because the statement had not been reduced to writing. The trial court overruled Bravieri's objection and admitted the evidence.

In addition to Ault's eyewitness testimony, the State presented testimony from the medical examiner regarding Gasic's and Sarlo's injuries. Gasic was killed by two shots from a shotgun. Sarlo died from blunt trauma, stabbing, and shooting which occurred over a short period of time, and any of which could have been fatal. In all, he had approximately 22 blunt trauma injuries to his head, 24 stab wounds, and 4 gunshot wounds. In addition, his hands were slashed in what the medical examiner described as "defensive type wounds." The caliber of the bullets recovered from Sarlo's body matched the caliber of a pistol that Zuniga owned and admitted to throwing into a river after Sarlo's death.

Bravieri testified in his own defense. Before the day of the shootings, Gasic asked Bravieri to keep a shotgun that she had been given as payment for cocaine, and Bravieri claimed that he refused to do so. Like Ault, Bravieri also testified that he, Zuniga, and Sarlo arrived at Gasic's apartment early in the morning on December 18, 1988, and they played cards and snorted cocaine. According to Bravieri, however, Sarlo was mad at him and Zuniga because they would not help him take over Gasic's cocaine business.

Thus, Sarlo got up from the table, shot Gasic, and came at him and Zuniga with a gun. With respect to the struggle in the kitchen, Bravieri stated that while he and Sarlo struggled, he stabbed Sarlo in the chest and back using three knives in order to defend himself. Bravieri also testified that Zuniga shot Sarlo and hit Sarlo in the head with a pistol as Sarlo and Bravieri fought with knives. The trial court found that Zuniga and Bravieri were guilty of first degree murder in connection with the deaths of Gasic and Sarlo, and sentenced them to life imprisonment.

**B.      Bravieri's Direct Appeal**

In his briefs filed with the Illinois Appellate Court, Bravieri contended that: (1) the State failed to establish that he was guilty of Sarlo's murder beyond a reasonable doubt; (2) the State prevented him from receiving a fair trial by admitting Ault's testimony regarding Zuniga's coat; (3) the State prevented him from receiving a fair trial by failing to disclose an exculpatory police report; and (4) the burden-shifting provision in Illinois' homicide statute violated his due process rights.

The Illinois Appellate Court declined to disturb the trial court's assessment of the witnesses' credibility or its resolution of the conflicts in the testimony. It thus rejected Bravieri's sufficiency of the evidence claim.

With respect to Bravieri's claim based on Zuniga's coat, the Illinois Appellate Court found that admission of Ault's testimony did not violate state law. It also noted that, in any event, the testimony about the shotgun allegedly under the coat was harmless given that Bravieri testified that Gasic had asked him to keep a shotgun for her. According to Bravieri, he had refused to do so. Thus, accepting this testimony as true, Bravieri would have known that there was a shotgun at the apartment. The Illinois Appellate Court, therefore, observed that regardless of whether Bravieri brought the shotgun to the apartment wrapped in a coat or it was already there, Bravieri would have been aware that there was a gun in the apartment.

Bravieri also took issue with the State's failure to provide him with a copy of a police report prior to trial. The report indicated that an officer investigating the case spoke with Darlene Silvestri, who claimed to have seen Sarlo and Bravieri in a bar the night before the murders. According to the report, Silvestri did not hear what the men were saying, and stated that they appeared to be speaking normally. Characterizing the report as exculpatory, Bravieri contends

that production of the report "may have led to evidence which would have corroborated [his] testimony." Bravieri, however, conceded that the State did not have the report in its possession (Bravieri obtained it after Zuniga subpoenaed documents from the Chicago police department).

Citing to *Brady v. Marlyand*, 373 U.S. 83 (1963), the Illinois Appellate Court held that the State did not suppress the evidence, given that Bravieri admitted that the prosecution did not possess the report and had not seen it at the time of the trial. It also rejected Bravieri's claim that the prosecutor had a duty to look for the report and give it to Bravieri, because the report did not support Bravieri's claim of innocence. Specifically, Silvestri did not hear what Bravieri and Sarlo said at the bar and the record contained ample evidence indicating that Bravieri and Sarlo were friends and socialized together frequently. The Illinois Appellate Court also found that Bravieri's claim that production of the report "may have led to evidence which would have corroborated [his] testimony" was vague and did not raise a reasonable doubt as to his innocence or support his self-defense theory.

Finally, the Illinois Appellate Court rejected Bravieri's challenge to the constitutionality of the Illinois homicide statute. The Illinois Supreme Court denied Bravieri's petition for leave to appeal as to the four issues he raised at the appellate level.

C.      **Bravieri's Post-Conviction Appeal**

In Bravieri's post-conviction petition, he stated that his attorney, without his knowledge or consent, agreed to execute a joint defense with Zuniga's lawyer. Bravieri argued that this was problematic because in Zuniga's post-conviction petition, Zuniga claimed that his attorney was ineffective because he was mentally ill at the time of, and leading up to, Zuniga and Bravieri's trial. It is uncontested that Zuniga's lawyer, among other things, left the courtroom for

significant periods of time while testimony was being given and otherwise acted in a bizarre fashion during the trial.

Under the alleged joint defense agreement, Zuniga's lawyer was to prepare the cross-examinations of the State's forensic experts and conduct an independent investigation of the State's forensic evidence. Specifically, Zuniga's lawyer was to have a fingerprint on the shotgun used in Gasic's murder tested. Bravieri's defense at trial was that Sarlo had actually murdered Gasic and that he had killed Sarlo in self-defense.

Bravieri claimed that Sarlo's fingerprint on the shotgun would have bolstered his defense theory and undercut Ault's testimony. He thus concluded that his attorney's delegation of this vital act to Zuniga's incompetent attorney meant that his own attorney rendered constitutionally ineffective assistance. Bravieri supported his petition with his own affidavit, plus two affidavits from his attorney, who claimed that he forgot to pursue the fingerprint evidence issue because he was responding to pleas for help from Zuniga given Zuniga's attorney's bizarre conduct during the trial.

With respect to Bravieri's ineffective assistance argument, the Illinois Appellate Court identified *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984), as the controlling standard. It then held that Bravieri had failed to establish that he was prejudiced by any errors allegedly committed by his attorney. In support, the court noted that the State's forensic evidence found a single fingerprint, which was not extracted, on the shotgun. It then held that identifying the print would not determine who killed Gasic since Ault testified that Sarlo, Zuniga, and Bravieri struggled for possession of the gun, and Zuniga said that he saw Sarlo and Bravieri fighting for control of the gun.

The court also found that given the struggle over the gun, there was ample opportunity for Sarlo and Bravieri's prints to be on the gun regardless of who was the aggressor. In addition, the court noted that the gun had been shot three times, but only one print was left, so it was obvious that every finger that touched the gun did not leave an extractable print. It also held that, in any event, any fingerprints on the gun did not undercut Ault's testimony that she heard Bravieri tell Gasic that "she just had to go," heard two gunshots, and heard Bravieri tell Sarlo that he "had to go too." Finally, it found that even if the fingerprint belonged to Sarlo, it would not help to cast Bravieri's guilty behavior after the killings in a better light. The court thus concluded that Bravieri's allegations, even accepted as true, did not establish a viable defense that his attorney failed to present. Bravieri raised this claim unsuccessfully in a petition for leave to appeal filed with the Illinois Supreme Court.

## III.     Discussion

Bravieri's § 2254 petition raises all of the arguments he presented to the state court in his direct and state collateral appeals.

### A.        Threshold Matters

The court will begin by summarizing the rules governing exhaustion and procedural default and by recapping the standard of review that guides this court in resolving Bravieri's § 2254 petition.

#### 1.        Exhaustion and Procedural Default

Before this court may reach the merits of Bravieri's federal habeas claims, it must consider whether he has exhausted his state remedies and avoided procedural default under Illinois law. *See Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir. 2002).

### a. Exhaustion of State Court Remedies

To exhaust state court remedies, a petitioner must give the state courts an opportunity to act on each of his claims before he presents them to a federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). State remedies are exhausted when they are presented to the state's highest court for a ruling on the merits or when no means of pursuing review remain available. *Boerckel*, 526 U.S. at 844-45, 847; 28 U.S.C. § 2254(c). Here, Bravieri has exhausted his state court remedies because no state court relief is available to him at this stage in the proceedings.

### b. Procedural Default

Procedural default occurs when a petitioner fails to comply with state procedural rules. *Mahaffey*, 294 F.3d at 915. This occurs when the petitioner fails to pursue all appeals required by state law, *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), or fails to fully and fairly present his federal claims to the state court, *Boerckel*, 526 U.S. at 844. It also occurs when the state court did not address a federal claim because the petitioner failed to satisfy an independent and adequate state procedural requirement, *Stewart v. Smith*, 536 U.S. 856 (2002). If an Illinois appellate court finds that a claim is waived, that holding constitutes an independent and adequate state ground. *Rodriquez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003).

Nevertheless, this court may still reach the merits of a procedurally defaulted claim if the petitioner establishes either cause for his failure to follow a rule of state procedure and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). To establish a fundamental miscarriage of justice, the petitioner must present new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable juror would convict him in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## 2.     Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).  In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours."  *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case.  *See id.* at 407.  A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable.  *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003) (unreasonable application more than incorrect or erroneous).  In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion."  *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet,* 332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is reasonable if one of several equally plausible outcomes); *Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and circumstances of the case).

**B.     Bravieri's Claims**

**1.     Disclosure of the Police Report**

Bravieri contends that he did not receive a fair trial because the State failed to disclose an allegedly exculpatory police report prior to trial.  As noted above, the police report memorialized a conversation between an officer investigating the murders and Darlene Silvestri, who claimed to have seen Sarlo and Bravieri in a bar the night before the murders.  According to the report, Silvestri did not hear what Sarlo and Bravieri were saying, and was only able to state that they appeared to be speaking normally.  Citing to *Brady v. Maryland*, 373 U.S. 83 (1963), the Illinois Appellate Court found that the report did not support Bravieri's self-defense theory.  It thus rejected his claim that production of the report "may have led to evidence which would have corroborated [his] testimony."

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id*. at 87.  Favorable evidence under *Brady* includes both exculpatory and impeachment evidence.  *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).  With respect to whether evidence is material, a *Brady* claim can succeed only when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Id*. at 434.

Here, the Illinois Appellate Court's rejection of Bravieri's claim based on the police report is neither "contrary to" nor "an unreasonable application of" *Brady*.  First and foremost, the Illinois Appellate Court identified and summarized the controlling Supreme Court precedent.  Second, it correctly applied that precedent when it found that the police report was neither favorable nor material and thus was not within the scope of *Brady*.

The court declines to disturb this conclusion, given that the police report memorializing Silvestri's view of Sarlo and Bravieri having a "normal" conversation was not exculpatory since Silvestri did not hear anything that Sarlo or Bravieri said. Moreover, the fact that the two men were having a "normal" conversation does not add anything to the record, given that it was uncontested that they socialized together. In addition, Bravieri could not have used the report as impeachment evidence, as he does not identify any trial testimony that it contradicted.

Furthermore, the possibility that Silvestri "may have had evidence favorable to the defendant despite the police report to the contrary" does not mean that the state court's ruling regarding the failure to produce the police report was contrary to or an unreasonable application of *Brady*. Bravieri asserts that Silvestri must have known more than she told police because she saw Bravieri and Sarlo speaking shortly before the murders. Surely, contends Bravieri, "the existence of a person who had contact with the parties involved in the homicide mere hours before the killings may have had detailed information." Reply at 6. He also contends that perhaps some unknown circumstance made Silvestri reluctant to speak openly to police because she "may have feared reproach for revealing too much information." *Id*.

The problem with these arguments is that they are speculative. The Seventh Circuit has held that "[a] due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the . . . court." *United States v. Navarro*, 737 F.2d 625, 631 (7th Cir. 1984). As noted above, evidence is material if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. at 434. "This standard is not met by '[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial.'" *Lieberman v. Washington*, 128 F.3d 1085, 1092 (7th Cir.

1997), *quoting United States v. Agurs*, 427 U.S. 97, 109-10 (1976). Accordingly, the court finds that the Illinois Appellate Court reasonably concluded that Bravieri was not entitled to relief with respect to his *Brady* claim based on the police report.

### 2. Sandra Ault's Testimony Regarding Zuniga's Coat

Bravieri next takes issue with the fact that the trial court allowed Ault to testify that when Bravieri entered the apartment on the day of the murders, he was carrying Zuniga's coat in front of him in a strange manner that suggested that he was hiding a gun. At trial, Bravieri's counsel objected to the admission of Ault's testimony about the coat, claiming that the State had violated its duty to disclose this information prior to trial. In response, the State argued that there was no discovery violation because the statement had not been reduced to writing. The trial court overruled Bravieri's objection and admitted the evidence.

The Illinois Appellate Court found that admission of Ault's testimony did not violate state law. It also noted that, in any event, the testimony about the shotgun allegedly hidden under the coat was harmless given that Bravieri testified that Gasic had asked him to keep a shotgun for her. According to Bravieri, he had refused to do so. Thus, accepting this testimony as true, Bravieri would have known that there was a shotgun at the apartment. The Illinois Appellate Court, therefore, observed that regardless of whether Bravieri brought the shotgun to the apartment wrapped in a coat or it was already there, Bravieri would have been aware that there was a gun in the apartment.

With this background in mind, the court turns to the parties' arguments. The respondent argues at length that Bravieri failed to cast his claims regarding the coat testimony in federal constitutional terms. *See Verdin v. O'Leary*, 972 F.2d 1467, 1474-75 (7th Cir.1992) (a petitioner need not cite "book and verse of the federal constitution" to present a constitutional claim but he

must "raise the red flag of constitutional breach" in state court or his claims will be barred in federal court). Bravieri does not respond to this argument. Instead, he contends that the failure to produce Ault's statement (which he concedes was never memorialized in writing) deprived him of the opportunity to investigate it in violation of *Brady*. He also argues that he waived the right to a jury without knowing that Ault would describe his entry into the apartment in the way that she did.

The court has taken an unescorted tour of the record. Pages 13 – 16 of Bravieri's opening brief on direct appeal address Ault's testimony, but do not contain anything that could be fairly characterized as a *Brady* or other federal constitutional argument. Instead, Bravieri attacks the credibility of Ault's testimony and contends that the trial judge should have believed him and disbelieved Ault. He thus has cast his argument in terms of a state law evidentiary argument, as opposed to a federal constitutional claim. This argument is not enough to preserve Bravieri's claims regarding Ault's description of his entry into the apartment.

In the interests of completeness, the court notes that *Brady* would not have helped Bravieri because, as noted by the Illinois Appellate Court, Bravieri knew a gun was at the apartment regardless of whether he carried one in. Thus, Bravieri has pointed to no evidence showing that if the prosecution had immediately told Bravieri's lawyer about Ault's testimony about the coat, the result at trial would have been different. Moreover, as Bravieri acknowledged in his opening brief filed on direct appeal (at page 16), he impeached Ault at trial by introducing evidence indicating that she failed to include the statement about the coat in her grand jury testimony. Bravieri thus has failed to direct the court to any specific evidence supporting a due process argument based on his alleged inability to perform an effective cross-examination of Ault. Therefore, he has failed to show that there would have been a reasonable probability of a

different result if he had known about Ault's testimony regarding the coat.  But this is all beside the point, as Bravieri did not raise any federal constitutional arguments arising from Ault's coat testimony in his direct appeal.

### 3.    Burden-Shifting Provision in 720 ILC § 5/9-2(c)

According to Bravieri, the Illinois homicide statute, 720 ILCS 5/9-2(c), is unconstitutional because it shifts the burden of proof to the defendant to show that his acts did not constitute first degree murder.  The Illinois Appellate Court rejected this argument based on its finding that Illinois courts had repeatedly rejected it.  In support, it cited to numerous decisions relying on *Patterson v. New York*, 432 U.S. 197, 210 (1977), which holds that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged."  Bravieri acknowledges that challenges to the statute's constitutionality has failed in both the Illinois courts and the Seventh Circuit, but nevertheless asserts that application of the statute violated his due process rights.  *See Mason v. Gramley*, 9 F.3d 1345 (7th Cir. 1993) (rejecting constitutional challenge), *overruled on other grounds by Hogan v. McBride*, 74 F.3d 144 (7th Cir. 1996).

Where the state appellate court rules on the merits of an argument raised by the petitioner but does not discuss the claim with reference to federal law, it is irrelevant if the standard the state court applied is as demanding as the federal standard.  *Oswald v. Betrand*, 374 F.3d 475, 477 (7th Cir. 2004), *citing Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam); *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  Here, while the state court did not itself discuss federal precedent, it cited to cases that did, and those cases pointed to the correct standard.  *See also In re Winship*, 397 U.S. 358 (1970).  Moreover, the Illinois Appellate Court relied on the appropriate United States Supreme Court precedent and the Seventh Circuit has previously

rejected challenges to the Illinois murder statute's constitutionality. Thus, this court finds that the state court's decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

### 4. Guilty of Sarlo's Murder Beyond a Reasonable Doubt

Bravieri next argues that the evidence adduced at trial could not have allowed a rational finder of fact to find that he was guilty of the first degree murder of Sarlo. The parties agree that *Jackson v. Virginia*, 443 U.S. 307 (1979), contains the relevant standard for direct appellate review. In *Jackson*, the Supreme Court held that a conviction must stand if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. The state court cited to Illinois state cases containing the *Jackson* standard. This isn't a problem as the state court applied a standard that was substantively identical to the applicable federal standard. *See Oswald v. Betrand*, 374 F.3d at 477.

Bravieri acknowledges that testimony at trial supported his first degree murder conviction. Specifically, Ault heard Bravieri tell Sarlo, "No, you got to go, Carmie. You got to go, too." Ault also testified that a struggle subsequently ensued between Sarlo, Zuniga, and Bravieri. This is consistent with Zuniga's statement that he returned from a visit to the restroom to find Sarlo and Bravieri fighting for control of a shotgun. Ault also testified that as she fled from the apartment, she heard Bravieri going through the silverware drawer where the knives were stored. The medical examiner testified that Sarlo had extensive "defensive type wounds" and died from blunt trauma, stabbing, and shooting which occurred over a short period of time.

Regardless of this testimony, Bravieri argues that "a rational trier of fact would likely find reasonable doubt." Reply at 10. At trial, Bravieri testified that he and Sarlo had struggled and

that in self-defense, he stabbed Sarlo in the chest and back using three knives. He then contends that his self-defense theory was unrebutted because Ault did not personally view the events in the kitchen and fled the apartment before Sarlo's death.

This argument basically asks the court to jettison the state court's credibility determinations and redetermine credibility itself. Under *Jackson*, the court must view the evidence in the light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319. The state court credited Ault's testimony and disbelieved Bravieri, as it was entitled to do given the evidence at trial. Bravieri's differing take on the facts does not mean that the state court unreasonably applied the controlling law to the facts of the case.

### 5. Ineffective Assistance of Counsel

To render effective assistance of counsel under the Sixth Amendment to the United States Constitution, counsel's performance must satisfy the well-known *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Under the first prong of the *Strickland* standard, Bravieri must show that his counsel's representation fell below an objective standard of reasonableness. *Id*. at 687-88. The second *Strickland* prong requires Bravieri to establish that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 694. If a defendant fails to satisfy one of the *Strickland* prongs, the court's inquiry under *Strickland* ends. *See id*. at 697; *see also Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2002).

As detailed above, Bravieri asserts that his attorney, without his knowledge or consent, agreed to join forces with Zuniga's lawyer, who turned out to be mentally ill before and during Zuniga and Bravieri's trial. Under the alleged joint defense agreement, Zuniga's lawyer was to

prepare the cross-examinations of the State's forensic experts and have an analysis performed on the fingerprint on the gun used to shoot Gasic. Bravieri's position was that Sarlo murdered Gasic and he killed Sarlo in self-defense. He contends that identifying the fingerprint on the gun as Sarlo's would have bolstered his defense theory and undercut Ault's testimony. He also points to his own trial testimony stating that Sarlo hit him on the head with the shotgun during a struggle, drawing blood. According to Bravieri, the blood on the gun was his, and introducing this at trial would have established that Sarlo, not he, was the person who possessed the gun and shot Gasic.

The assertions regarding Zuniga's lawyer's alleged mental problems are very serious. However, they do not demonstrate that the state court's denial of Bravieri's post-conviction petition was contrary to or an unreasonable application of *Strickland* as the fact that co-counsel may not have been functioning at full capacity, while obviously far from ideal, is not enough, in and of itself, to show that Bravieri is entitled to habeas relief. *See Dixon v. Snyder*, 266 F.3d 693, 702 (7th Cir. 2001), *quoting Strickland*, 466 U.S. at 690 ("*Strickland* focuses on whether an attorney's performance was deficient, not on whether he was perfectly knowledgeable about the law, . . . . [so] a defendant must 'identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment'").

The specific acts that Bravieri focuses on also do not establish that he is entitled to relief under § 2254. Bravieri supported his state post conviction petition with his own affidavit, plus two affidavits from his state court trial attorney, who claimed that he forgot to pursue the fingerprint evidence issue because he was responding to pleas for help from Zuniga given Zuniga's attorney's bizarre conduct during the trial.

The Illinois Appellate Court identified *Strickland* as the controlling standard. It then held that Bravieri had failed to establish that he was prejudiced by any errors allegedly committed by

his attorney. In support, the court noted that the State's forensic evidence found a single fingerprint, which was not extracted, on the shotgun. It then held that identifying the print would not determine who killed Gasic since Ault testified that Sarlo, Zuniga, and Bravieri struggled for possession of the gun, and Zuniga said that he saw Sarlo and Bravieri fighting for control of the gun. The court also found that given the struggle over the gun, there was ample opportunity for Sarlo and/or Bravieri's prints to be on the gun regardless of who was the aggressor.

In addition, the court noted that the gun had been shot three times, but only one print was left, so it was obvious that every finger that touched the gun did not leave an extractable print. It also held that, in any event, any fingerprints on the gun did not undercut Ault's testimony that she heard Bravieri tell Gasic that "she just had to go," heard two gunshots, and heard Bravieri tell Sarlo that he "had to go too." Finally, it found that even if the fingerprint was Sarlo's, Bravieri acted suspiciously after the killings. The court thus concluded that, even assuming Bravieri's take on what an investigation of the fingerprint would have revealed was correct, his attorney's failure to conduct that investigation was not prejudicial.

In his § 2254 petition, Bravieri repeats the fingerprint argument and also contends that his lawyer should have ensured that the gun was tested for forensic evidence, as Bravieri's blood was on the gun. According to Bravieri, presentation of this evidence would have: (1) corroborated his testimony about who shot Gasic and (2) supported his position that he was not in possession of the gun at all times during the scuffle with Sarlo and thus was acting in self-defense.

The court has reviewed Bravieri's brief filed in support of his state post-conviction petition. It briefly (at pages 20-21) mentions the blood issue. Specifically, Bravieri notes that Pamela Fish, a Chicago Police Department Serology supervisor, found trace elements of blood on the gun but there was insufficient blood to test. Bravieri moved for re-examination of the

blood after trial due to advances in DNA testing, but the Circuit Court did not rule on this motion. The argument section of the brief does not mention the blood issue at all. Similarly, Bravieri's petition for leave to appeal observes, in a footnote, that the circuit court did not rule on Bravieri's motion to retest the blood on the gun. *See* Petition for Leave to Appeal at 6 n.2. However, the argument section of the brief focuses exclusively on the fingerprint issue. Because Bravieri elected to raise only the fingerprint issue at all levels of the state court proceedings, the court finds that the blood issue is procedurally barred.[1] *See Boerckel*, 526 U.S. at 844 (a petitioner must present his claims to the Illinois courts, up to and including the Illinois Supreme Court, to avoid procedural default).

With respect to the fingerprint issue, the court finds that the Illinois Appellate Court's decision is entirely plausible as well as consistent with facts and circumstances of the case. If the reader will excuse the expression, the fingerprint on the gun was not a smoking gun that would have had any sort of meaningful impact on the state's case. The record does not show whose fingerprint was on the gun. In any event, Ault testified that before Gasic was shot, Sarlo, Zuniga, and Bravieri all struggled for possession of the gun, and Zuniga testified that Sarlo and Bravieri fought for control of the gun. So as noted by the Illinois Appellate court, regardless of whether Bravieri was the aggressor or not, his prints (and/or Sarlo's) could have been on the gun.

---

[1] In any event, even if the blood issue was properly before this court and the blood on the gun was Bravieri's because Sarlo hit him on the head with the shotgun during a struggle, there is no reasonable probability that the hypothetical blood evidence would have affected the outcome. Bravieri could have shot Gasic regardless of whose blood was on the gun, as Ault testified that she saw Bravieri pointing a gun at Gasic and heard him say, "You got to go Joann, you just got to go," followed by the sound of two gunshots. Moreover, Bravieri and Sarlo's alleged struggle for the gun occurred after Gasic's death, so even if Braveri's blood got on the gun at that point, it does not speak to who possessed the gun when Gasic was shot.

Moreover, the record shows that the gun was shot three times, yet had only one extractable print. Thus, many prints were, by definition, missing. Even if the extractable print was not Bravieri's, therefore, he still could have touched the gun. In addition, even if the extractable print was Sarlo's, Ault testified that she heard Bravieri tell Gasic that "she just had to go," followed by gunshots, and Bravieri's statement to Sarlo that he "had to go too." And even if the print was Sarlo's, Bravieri acted suspiciously after the killings.

In short, Bravieri presented his take on the events on December 18, 1988, and the State presented evidence depicting a different chain of events leading to Gasic's fatal gunshot wound and Sarlo's death due to shooting, stabbing, and blunt trauma. Bravieri asserts that the extractable print wasn't his, and things would have been different at trial if evidence to that effect had been presented. However, based on all of the evidence adduced at trial, even if forensic testing would have established that the single extractable print was not Bravieri's, there is no reasonable probability that the result of the proceeding would have been different. Thus, the state court's ruling as to the prejudice prong is neither contrary to nor an unreasonable application of *Strickland*.

### 6. Exceptions to Procedural Default

A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750. Bravieri does not address the possibility that he defaulted his claims based on Ault's testimony about the coat or the blood on the gun, despite the arguments in the respondent's answer. Indeed, Bravieri's filing does not mention the extremely tangential way in which he included only an extremely

cursory statement about the lack of forensic testing of blood on the gun in the fact section of his state court briefs. Instead, he proceeds as if he raised this issue as an argument at all levels of his state court proceedings. The court will nevertheless consider whether the exceptions to procedural default can help him as to the coat or blood issues.

Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Here, Bravieri failed to properly follow state procedural rules in that he did not frame the coat issue in constitutional terms or raise the blood issue when he could have done so. Nothing in the record before the court indicates that an objective factor prevented him from raising these issues. Thus, cause does not excuse his default. Moreover, an allegation of ineffective assistance of counsel is not, by itself, enough to establish prejudice. *See Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998). Thus, neither cause nor prejudice exists.

The fundamental miscarriage of justice exception is also inapplicable because "this relief is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Id.* Bravieri's petition, as well as the state court pleadings submitted to the court, do not contain any substantiated allegations of actual innocence. Thus, this exception does not apply.

IV.    **Conclusion**

For the above reasons, Bravieri's § 2254 petition is denied.


DATE:        April 18, 2006

_Blanche M. Manning_
Blanche M. Manning
United States District Court Judge